DECISION
Before this Court is an appeal brought by Plaintiff, Vincent Koczkodan (Plaintiff), of the June 25, 1998 decision issued by the Town of Hopkinton Zoning Board of Review (Board). Through this decision, the Board granted the appeal brought by Mr. and Mrs. Roland Baton (collectively the Batons), who are neighboring landowners of Plaintiff. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
Plaintiff owns property designated as Lot 10B on Tax Assessor's Map 29 and located at 53 Skunk Hill Road in Hopkinton, Rhode Island (subject premises). The subject premises are located in a RFR-80 zone. The Batons' property, located at 45A Skunk Hill Road in Hopkinton, Rhode Island, is adjacent to that of Plaintiff.
Plaintiff operates a gravel business, Coop Sand and Gravel Co., at 90 Arcadia Street, which is across the street from the subject premises. The gravel business is operated pursuant to a special exception granted by the Board in 1987 which stipulated that the trucks used in the operation must be garaged in Hopkinton on the premises. Thus, Plaintiff decided to build a garage. However, he built the garage at the subject premises, rather than at 90 Arcadia Street where Coop Sand and Gravel Co is located.
In 1994, Hopkington amended the zoning ordinance to ban local and long distance trucking, with or without storage, in an RFR-80 district. The 1994 zoning ordinance continued to prohibit parking or storage of trailer trucks in any front yard in a residential zone-just as it had done prior to amendment. Plaintiff apparently felt that the changes made to the zoning ordinance affected him, as he got a letter from the Tax Assessor which provided in pertinent part: "Reg # [registration number left blank] are located at Plat 29 lot 10B prior to zoning. This will be considered grandfather [sic] so long as there is [sic] no complaints from that area."
In October of 1996, Plaintiff obtained a building permit to build a residential garage at the subject premises. On October 9, 1996, he received a zoning certificate which stated that the intended use of the building, "to store and maintain trucks and equipment," is in accordance with the Hopkinton Zoning Ordinance. Neither the building permit nor the zoning certificate mentioned a nonconforming use.
The garage was built, and Plaintiff began parking his trucks in the garage sometime in 1997. It appears that complaints were made about the activities going on at the subject premises as the Building Inspector wrote a letter to the Town Council, dated May 9, 1997, explaining his decision to grant the building permit.
In late 1997, the Batons made several complaints to the Building Inspector regarding the early morning starting of the trucks and the dirt piles on the subject premises. Since they did not receive any satisfaction from the Building Inspector, the Batons filed an undated application for appeal with the Board sometime in the beginning of 1998. In explaining the grounds for their petition, the Batons wrote "[w]e want all trucks, machinery and materials removed from 53 Skunk Hill Rd. We want Coop Enterprises stopped from operating at 53 Skunk Hill Rd. We want the structure to be used for a purpose within RFR-80 guidelines." (Baton Appeal) Also, the Batons wrote that they were "appealing usage of 53Skunk Hill Rd." Id. (emphasis in original). Finally, the Batons stated "we do not want ANY type of business situated on this property." Id.
(emphasis in original).
The Board held its first hearing on this application on February 19, 1998, at which time it reviewed the documents submitted and accepted the application as complete. Subsequently, the Board received testimony and other pertinent evidence regarding the Batons' petition during hearings held April 16, 1998; May 21, 1998; and June 4, 1998. On June 25, 1998, the Board issued a comprehensive decision in which it found "the appeal to be timely and in compliance with Section 24 of the Zoning Ordinance of the Town of Hopkinton, as amended." (Zoning Board Decision at Hopkinton Land of Evidence Records at Book 283, Page 366.) The Board found, in pertinent part, that the "primary use of the property is to store, garage, repair and service vehicles of Coop Enterprises, Inc.,. . .and other farm equipment"; "the property is being used as part of a commercial operation of Coop Enterprises, Inc. which engages in the sand and gravel business"; the certificate of occupancy "issued on March 16, 1998 . . . is illegal and in violation of 23-27.3-1201 of the Rhode Island General Laws"; "the storage and garaging, service and repairing of commercial vehicles on the premises is not a `residential use' and that the same are not permitted uses under the Hopkinton Zoning Board"; "Mr. Koczkodan does not have grandfathered rights for the storage, garaging or repairing of vehicles on the premises"; and "even if the owner Koczkodan was grandfathered in 1994, the construction of the building in 1996 is an increase in the non-conforming status, therefore, illegal as the same was not increased after due notice to all abutters." Id. at Book 283, Page 363-66. Given these findings, the Board directed the Building and Zoning Inspector "to terminate all commercial use of the property at 53 Skunk Hill Road, including the storage and overnight storage of trucks which are not residential vehicles, and further use of the premises as an office or a shop"; "to order the removal of all junk vehicles, commercial vehicles and related equipment from the premises"; and "to rescind the same Certificate of Occupancy issued on March 16, 1998 as the same is illegal and void and in violation of R.I.G.L. 23-27.3-1201." Id. at Book 283, Page 366-67.
Plaintiff filed a timely appeal of the Board's decision. Plaintiff requests that this Court reverse the Board's decision.
 Standard of Review
The standard of review for this Court's appellate consideration of the decision is outlined in G.L. 1956 § 45-24-69(d), which states:
 "(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
(1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991) (citations omitted). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance."Caswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citations omitted). The Court is compelled to uphold a zoning board decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record.Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985)
 Review of the Zoning Board's Decision
Plaintiff raises a number of arguments on appeal, including that the Board did not have jurisdiction to hear the Batons' appeal; that the Batons' appeal was untimely; that the weight of the record evidence indicates that Plaintiff's use of the subject premises is an accessory use; that the parking and storage of trucks and equipment on the subject premises constitutes a lawful preexisting nonconforming use; that the Board lacked the authority to enforce the zoning ordinance by ordering the abatement of an alleged zoning violation; and, finally, that the doctrine of equitable estoppel prevents the Board from disallowing the parking and storage of trucks and equipment on the subject premises. The Court considers each of Plaintiff's arguments.
The Appeal
Plaintiff maintains that by granting the Batons' appeal, the Board acted beyond its authority, since, according to Plaintiff, the petition did not constitute an appeal from any specific action or determination made by Bart Fraser (Fraser), the Building and Zoning Inspector of the Town of Hopkinton. The Board argues that the Batons' appeal was based upon the May 9, 1997 letter issued by Fraser in which Fraser stated that the property was not being used as a gravel pit and explained his reasons for issuing the building permit.
The Rhode Island Supreme Court has stated that the authority of the zoning board "is limited in scope to that expressly conferred by the statute." Noonan v. Zoning Board of Review, 90 R.I. 466, 471, 159 A.2d 606, 608 (1960). Section 20(A)(1) of the Code of Ordinances for the Town of Hopkinton (Zoning Ordinance), which mirrors the language of G.L. 1956 § 45-24-57(1)(i), provides that the zoning board shall have the power:
 "[t]o hear and decide appeals in a timely fashion where it is alleged there is an error in any order, requirement, decision, or determination made by the zoning enforcement officer in the enforcement or interpretation of this ordinance, or of any ordinance adopted pursuant hereto."
Additionally, Section 24(B) of the Zoning Ordinance, which approximates G.L. 1956 § 45-24-64, provides:
 "[a]n appeal to the zoning board from a decision of any zoning enforcement officer, agency or officer may be taken by an aggrieved party. The appeal shall be taken within a reasonable period of time of the date of the recording of the decision by the said officer or agency by filing with the officer or agency from whom the appeal is taken, and with the zoning board, a notice of appeal specifying the ground thereof."
In the instant case, the Batons never specifically stated that they were appealing from the May 9, 1997 letter. However, the undated application for appeal submitted by the Batons did state the grounds upon which they were appealing. The Batons stated in their appeal that they "d[id] not want ANY type of business situated on this property" and that they were essentially "appealing usage of 53 Skunk Hill Rd." (Baton Appeal). This Court notes that the appeal application form provided to the Batons did not request that they identify a specific decision or determination from which they were appealing.
At the outset of the April 16th hearing, Plaintiff, through his counsel, questioned what the Batons were appealing when he stated:
 "This alleged appeal. . . . I would indicate Mr. Baton's own notice suggests a petition for an appeal of the building and zoning official's decision; which leads me to the next issue: What are they appealing? Are they appealing the zoning enforcement official, Mr. Fraser's, submission of an issuance of a building permit, which was done in 1986? Are they appealing a letter given by Mr. Fraser in 1997 to the Town Council?" (April 16, 1998 Tr. at 6-7.)
Initially, there was some confusion even among members of the Board regarding precisely what was being appealed to the Board. However, at the first public hearing, in a conversation with Chairman Aldrich, Ms. Sullivan, who was representing the Batons, clarified that she was appealing the use of the property:
 "CHAIRMAN ALDRICH: You're appealing the issuance of the building — no, you're not appealing the issuance of the building permit, you're appealing — MS. SULLIVAN: The use. What it's being used for. As far as having a residence there, I have no problem with that. I have a problem with what that building is being used for in a residential zone." (April 16, 1998 Tr. at 22-23.)
Thus, although it is true that even at last hearing, the Board was still unclear on exactly what document the Batons were appealing, the record reflects that the Batons, the Board, and Plaintiff were all clear that the issue of the appeal was the usage of the property.
Prior to their appeal, the Batons had complained to Fraser several times regarding the usage of the property, and Fraser told them to file an appeal since they were not happy with his response to their complaints. Thus, after being unable to get any satisfaction from meeting with Fraser, the Batons appealed the usage of the property. Eventually, the May 9, 1997 letter was tentatively identified by the board as the document which contained written findings by Fraser regarding Plaintiff's property.
This Court finds that despite the fact that the Batons did not specifically identify the letter as the document from which they were appealing, they identified the grounds upon which they were appealing, and Plaintiff was provided with sufficient information as to the subject of the appeal so as to allow him to prepare a defense. Thus, the Baton's appeal complied with the spirit of the relevant statutes. So long as the appeal was timely, the appeal was properly before the board.
This leads to Plaintiff's next argument in which he argues that even if the Batons' appeal could properly be based upon the May 1997 letter issued by Fraser, such an appeal was nevertheless untimely. The Zoning Board insists, however, that the appeal was timely.
In Zeilstra v. Barrington Zoning Bd. of Review, 417 A.2d 303 (R.I. 1980), the Rhode Island Supreme Court stated that "the determination of the timeliness of . . . [the] appeal must depend upon the peculiar facts of the instant case." Id. at 308. The court in Zeilstra held that the time for the appeal begins to run when a person becomes chargeable with knowledge of the decision from which he sought to appeal. See id. Thus, according to Zeilstra, a reasonable time for the appeal from the grant of a building permit does not necessarily begin to run the moment the permit is issued or the construction commenced. Rather, the time for appeal did not begin to run until the neighbor noticed that the building was progressing beyond one story. See id.
In the instant case, the Batons and other neighboring landowners did not realize how the garage would be used until the winter months of 1997 because, as Plaintiff testified, the trucks were not intended to be and were not actually garaged at the subject premises except for the winter months. The construction activity at the subject premises, including the grading and staking out of the property, were insufficient to put the neighboring landowners on notice of the use for which the property was to be put. Upon making this discovery, the Batons and others registered their complaints with Fraser regarding Plaintiff's increased use of the subject premises to garage the vehicles used in his business. The Batons tried unsuccessfully to resolve their complaints through meetings with Fraser and filed their appeal after their complaints were not resolved to their satisfaction. Accordingly, this Court finds that their appeal taken in February of 1998 was within a reasonable period of time as contemplated by the statute.
Permitted Accessory
Use Plaintiff contends that the overwhelming weight of the record evidence shows that his storage and parking of trucks and other equipment on the subject premises constituted a permitted accessory use to the Barszcz Family Farm. In support of its argument, Plaintiff relies on G.L. 1956 § 45-24-31(3) and Section 2(3) of the Zoning Ordinance. G.L 1956 § 45-24-31(3) defines accessory use as
 "[a] use of land or of a building, or portion thereof, customarily incidental and subordinate to the principal use of the land or building. An accessory use may be restricted to the same lot as the principal use. An accessory use shall not be permitted without the principal use to which it is related."
Moreover, § 2(3) of the Zoning Ordinance similarly defines an accessory use as a "use of land or of a building, or portion thereof, customarily incidental and subordinate to the principal use of the land or building or the structure in which the use takes place." Plaintiff maintains that the Zoning Ordinance permits agricultural uses in an RFR-80 zone such that the existence, use, and storage on farm property of farm equipment and trucks used in farming is incidental and subordinate to the use of the property as a farm.
The Board discussed whether or not storage and repair of farm equipment constituted a permitted use at the hearings. However, the Board, in its decision, did not make any specific findings or conclusions that such use was not permitted; nor does this Court read their directive to the Building and Zoning Inspector to include any directions as to the storage and repair of farm equipment. Accordingly, this Court need not consider whether or not the storage and repair of farm equipment constitutes an accessory use.
However, the Board did find that "the storage and garaging, service and repairing of commercial vehicles on the premises is not a `residential use' and that the same are not permitted uses under the Hopkinton Zoning Board." (Zoning Board Decision at Hopkinton Land of Evidence Records at Book 283, Page 364-65.) The Board did not make any findings as to whether such a use could constitute an accessory use, and upon review of the record, this Court does not find any specific discussion of the issue. Accordingly, this Court remands this case back to the Board so that the Board may hear testimony and make findings as to whether such a use constitutes an accessory use.
Nonconforming Use
Plaintiff argues that the evidence in the record demonstrates that his storage of trucks and farm equipment on the subject premises constituted a nonconforming use because he stored and parked trucks and farm equipment at the subject premises prior to the change in the town's zoning laws that prohibited such parking. Although in some cases a zoning board does not have the statutory authority to make a finding as to the existence of a nonconforming use, see RICO Corp. v. Town of Exeter,787 A.2d 1136 (R.I. 2001), in this case, the matter was properly before the board as it was the subject of the appeal. See G.L. 1956 §45-24-57(1)(i); Code of Ordinances for the Town of Hopkinton, Ch. 134, § 24B (providing that zoning board has the power to hear and decide appeals "where it is alleged there is an error in any determination made by the zoning enforcement officer in the enforcement or interpretation of this ordinance).
As previously stated, the Board's decision did not determine that the storage and repair of farm equipment was not a permitted use, nor did it direct the Building and Zoning Inspector to order the removal of farm equipment. Thus, this court need not consider whether such a use constitutes a nonconforming use. Instead, this Court need only consider whether there is substantial evidence to support the Board's determination that Plaintiff's storage and repair of trucks does not constitute a nonconforming use.
The Supreme Court in RICO Corp stated that "[a] nonconforming use is a particular use of property that does not conform to the zoning restrictions applicable to that property but which use is protected because it existed lawfully before the effective date of the enactment of the zoning restrictions and has continued unabated since then." Id. at 1144. In § 2(50) of the Zoning Ordinance, a nonconformance is defined as a "building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of the zoning ordinance and not in conformity with the provisions of such ordinance or amendment." "The burden of proving a nonconforming use is upon the person or corporation asserting the nonconforming use, and that party must prove that the use lawfully was established before the zoning restrictions were placed upon the land." RICO Corp, 787 A.2d 1136 at 1144.
In 1994, the Zoning Ordinance was amended to prohibit local and long distance trucking, with or without storage in an RFR-80 district. Thus, in order to establish a nonconforming use, Plaintiff had to prove that at the time of the amendment he was lawfully utilizing his property in a manner which was not in conformance with the newly enacted prohibition against local or long distance trucking, with or without storage.
Plaintiff argues that he may park his trucks at 53 Skunk Hill Road, since the zoning board, when it granted him a special exception to operate a gravel bank, required him to park his trucks on the "premises." According to Plaintiff, the "premises" should be interpreted to mean the Barszcz Family Farm — which Plaintiff alleges includes 53 Skunk Hill Road. However, the record reflects that the Board granted a special exception as to "property located of Arcadia Road and identified on the Assessor's Map 18 as Lot 32." (June 18, 1987 Zoning Board of Review Hearing). Thus, the evidence supports the Board's determination that the "premises" refers to the property designated as lot 32 on the Tax Assessor's Map 18 and does not refer to the property located at 53 Skunk Hill Road and designated as lot 10B on Tax Assessor's Map 29.
Plaintiff also argues that he acquired a nonconforming use by parking his trucks at 53 Skunk Hill Road prior to the 1994 amendment to the Zoning Ordinance. However, the Board found that based upon the testimony, Plaintiff did not acquire a nonconforming use. This Court must uphold a zoning board decision if it finds that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey,495 A.2d 257 (R.I. 1985) (citations omitted). Upon a review of the entire record, this Court finds that there is evidence to support the Board's decision as the record does not reflect that the subject premises were being utilized for local or long distance trucking at the time of the amendment. Rather, the record reflects that the subject premises were being cleared and the trucks were used to clear the site. (May 21, 1998 Tr. at 69-70, 75, 79-80, 88-92.) Although Plaintiff's brother testified that trucks were used to haul hay, Plaintiff's testimony contradicts that of his brother in that Plaintiff stated that "I wasn't hauling out at the time, because I was in the process of building the garage." Id. at 79. Accordingly, the record reflects that at the time of the amendment, 53 Skunk Hill Road was not being utilized in a manner that would violate the prohibition against local and long distance trucking with or without storage.
Finally, Plaintiff argues that the Board erroneously considered whether or not the Tax Assessor's letter included the registration numbers of Plaintiff's trucks and whether or not Plaintiff had notified abutters pursuant to the Tax Assessor's letter. According to Plaintiff, such considerations are irrelevant to a determination of the existence of a nonconforming use. The Court agrees that such factors are irrelevant, but notes that the Board did not base its determination that Plaintiff did not have a nonconforming use solely upon those factors. Rather, the Board also properly considered the testimony presented by Plaintiff and alternatively based its determination upon that testimony. Thus, this Court does not commit any error in affirming the Board's determination that Plaintiff has not acquired a nonconforming use. See Holmes v.Dowling, 413 A.2d 95, 99 (R.I. 1980) (holding that where a zoning board bases its decision on alternative grounds, one of which is correct, the petitioner "gains nothing by attacking an alternate basis for the denial").
This Court finds it noteworthy that the Board, in its decision, determined that even if the Board were to concede that Plaintiff had acquired a nonconforming use, Plaintiff's construction of the garage to house his trucks constituted "an increase in the non-conforming status" and was thus "illegal as the same was not increased after due notice to all abutters." (Zoning Board Decision at Hopkinton Land of Evidence Records at Book 283, Page 365.) Plaintiff has not challenged that finding. Thus, even if this Court were to agree that Plaintiff had acquired a nonconforming use, Plaintiff's current use would constitute an illegal increase of a nonconforming use.
Board Authority
Plaintiff next argues that the Board's order requiring the Building and Zoning Inspector to abate certain zoning violations on the subject premises was invalid as the Board lacked the authority under the enabling legislation to enforce the Zoning Ordinance. In its decision, the Board directed the Building and Zoning Inspector to "to terminate all commercial use of the property at 53 Skunk Hill Road" and to "to order the removal of all junk vehicles, commercial vehicles and related equipment from the premises." (Zoning Board Decision at Hopkinton Land of Evidence Records at Book 283, Page 366-67). Plaintiff argues that these directives are contrary to a Supreme Court ruling that a zoning board does not have the statutory authority to enforce local ordinances. SeeZeilstra v. Barrington Zoning Board of Review, 417 A.2d 303 (R.I. 1980).
However, this Court notes that subsequent to Zeilstra, the General Assembly passed the Rhode Island Zoning Enabling Act of 1991 which includes the requirements that the "zoning ordinance . . . must provide for the administration and enforcement of its provisions" and "must designate the local official or agency and specify minimum qualifications for the person or persons charged with its administration and enforcement, including: . . . issuance of violation notices with required correction action." G.L. 1956 § 45-24-54. There was no such provision at the time Zeilstra was decided.
Section 17 of the Zoning Ordinance provides that the zoning enforcement officer is responsible for the administration and enforcement of the zoning ordinance, and the zoning enforcement officer's duties include "[i]ssuance of violation notices with required correction action." Accordingly, the Board may order the zoning enforcement officer to issue violation notices with required correction actions. Correction actions may include an order "to terminate all commercial use of the property at 53 Skunk Hill Road, including the storage and overnight storage of trucks which are not residential vehicles, and further use of the premises as an office or a shop" and an order "to order the removal of all junk vehicles, commercial vehicles and related equipment from the premises." However, should judicial aid be necessary to enforce the correction actions of the zoning enforcement officer, only the town may bring such an action. See G.L. 1956 § 45-24-60.
This Court notes that the Board, in its decision, issued its directive to the Building and Zoning Inspector, and this Court is unclear as to whether or not the Building and Zoning Inspector is the zoning enforcement officer. Thus, this case is remanded to the Board with instructions that its directives be issued to the zoning enforcement officer as that is the local official that the Zoning Ordinance has designated as responsible for the administration and enforcement of the zoning ordinance. However, all directives should be stayed until the Board has made a determination as to the existence of an accessory use.
Equitable Estoppel
Finally, Plaintiff argues that the doctrine of equitable estoppel precludes the Board from preventing Plaintiff's storage of his trucks and farm equipment at the subject premises. Plaintiff maintains that he has spent over $200,000 to construct the garage on the subject premises in reliance upon the issuance of the building permit, zoning certificate and the December 1994 letter issued by the Tax Assessor. The Zoning Board maintains that Plaintiff's purported reliance on the building permit issued by the Building Inspector is "specious" since the Board has found that it is the use of the building, not the building itself, that is illegal. Moreover, the Zoning Board avers that Plaintiff's reliance on the 1994 letter from the Tax Assessor was also erroneous given Plaintiff's failure to abide by the terms of that letter. Accordingly, the Zoning Board maintains that the doctrine of equitable estoppel does not apply in the instant matter and its decision should be upheld.
This Court is mindful that the doctrine of equitable estoppel has been applied against a municipality in rare situations. Lombardi v. Kooloian,560 A.2d 951, 952 (R.I. 1989). However, in light of this Court's remand, which has instructed the Board to stay its directives until it makes a determination as to the existence of an accessory use, this Court need not make a determination as to this issue at this point.
 Conclusion
After a review of the entire record, this Court finds that the Board had jurisdiction to hear the Batons' appeal and that the appeal was timely. Furthermore, this Court finds that the Board's determination that Plaintiff has not acquired a nonconforming use is not clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record and is not affected by error of law. However, the Board, in its decision, did not make a finding as to whether Plaintiff's storage and repair of trucks constitutes an accessory use; thus Plaintiff's case is remanded to the Board in order that the Board may make such a determination.
Furthermore, this Court finds that the Board may order the zoning enforcement officer to issue correction actions. However, the Board, in its decision, issued its orders to the Building and Zoning Inspector, and this Court is unclear as to whether or not the Building and Zoning Inspector is the zoning enforcement officer. Thus, this case is remanded to the Board with instructions that the Board's directives be issued to the zoning enforcement officer as that is the local official that the Zoning Ordinance has designated as responsible for the administration and enforcement of the zoning ordinance. Any and all such directives should be stayed until the Board has made a determination as to the existence of an accessory use.
Counsel shall submit the appropriate order for entry in accordance with this decision.